Ex parte Wayman Henry
**CHUNN, III, Relator.**

**No. 01–94–00475–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 5, 1994.

Rehearing Denied Aug. 31, 1994.

Richard W. Schmude, Tomball, for appellant.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

The trial court held relator, Wayman Henry Chunn, III, in contempt for violating temporary orders in a divorce action. The trial court assessed criminal contempt punishment at confinement for 180 days. We grant habeas corpus relief.

In August 1990, Mrs. Chunn (the wife) sued relator for divorce in the 328th District Court of Fort Bend County, Texas. The divorce action was transferred to the impact court. On February 7, 1992, the parties reached a verbal agreement on conservatorship and possession of the three minor children, division of most of the community property, and other matters. Both parties notified the impact court that the case had been settled. On February 11, 1992, the impact court conducted a hearing at which the parties filed a document titled "Points of Agreement." The following transpired in open court:

**Questioning of Wife**

Q: Was any property acquired during the marriage?

A (The wife): Property in New Braunfels and a home.

Q: And subject to the approval of this Court, have you and your husband also agreed how those properties are to be divided?

A: Yes, we have.

Q: Just a rough sketch of that agreement has been introduced into writing; is that correct?

A: That's right.

Q: And have you read that this morning and signed it?

A: Yes, I have.

Q: And do you consider that this proposed division of properties to be fair and equitable between you and Mr. Chunn?

A: Yes, I do.

Q: And are you asking this Court to approve that settlement?

A: Yes, I am.

**Questioning of Husband**

Q: Okay. We have discussed the agreement on property division, support and conservatorship, joint managing conservatorship. You have read the points of the agreement over?

A (Relator): Yes.

Q: There is your signature on the back and you have initialled the changes?

A: Yes.

Q: Is that your agreement?

A: Yes.

. . . .

THE COURT: The Court would approve the settlement agreement. It will become the order of the Court and be incorporated into the final decree.

The Court names the parties joint managing conservators of the children, sets the child support at $1800 per month as agreed to.

. . . .

Then the Court would approve a mutual protective order and grant the divorce effective today.

The divorce case was reset for March 9, 1992, for entry of judgment. On that day, the parties appeared in the impact court. The wife expressed an unwillingness to sign anything and requested permission to consult another lawyer for a second opinion. Relator also was unwilling to sign the proposed judgment because he had problems with it, and relator requested a postponement. The cause was reset to April 13, 1992, and later to April 14 for entry of the order.

The wife hired a new attorney and filed an amended petition for divorce, seeking sole managing conservatorship of the children and a larger share of the marital estate. In addition, she sought substitution of counsel, further discovery, a social study, and mental examinations of the parties and the children.

On April 14, the parties appeared in the impact court for a hearing on (1) relator's motion for entry of a decree of divorce pursuant to the hearing of February 11, 1992, and (2) the wife's motions for social study, mental exam and other matters. The majority of the hearing focused on the wife's criticism of the February 11, 1992, agreement; her attorney complained about the valuations of the marital property, the legal representation the wife had received from her first attorney, and various problems concerning the parties' three daughters.

The impact court judge stated in open court:

Let me say this. It would appear to me that the Court could enter a final decree in this case. It also appears to me that probably there is grounds for a new trial. . . . My impression is that it would be better just to continue this case and try to resolve the matters, and if not, set it for trial.

. . . .

Okay. Here is the way I view this thing. The divorce was granted on the 11th of February, 1992, in this case. The judgment entered was to be an agreed judgment. The parties no longer agree; therefore, it cannot be entered as an agreed judgment. So, what we have to do, we have to continue the matter on the relationship, the parent-child relationship, and the division of property, and resolve those matters either by agreement of the parties—agreement of the parties or by a hearing. It could either be done before myself as judge or a jury.

. . . .

You can set it for trial in 60 days in this case, either a trial to the Court or a jury trial.

. . . .

Okay. I will set a trial date right now. The 14th of July, that's on a Tuesday.

On April 22, 1992, the impact court signed an order that states in part:

The Court finds that the Divorce Decree requested to be entered was based upon an agreement of the parties that resolved any and all issues involved in this cause. The Court further finds that there is no longer an agreement of the parties as to the issues involved in this divorce action and that unless an agreement can be reached, this cause should be submitted to the Court or to a jury for final hearing. Specifically, this court finds that, at this time, there is no agreement of the parties as to the issues involved in this cause and, as a result thereof, this Court is setting this cause for trial, unless good cause is shown, for July 14, 1992.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Movant, WAYMAN HENRY CHUNN III'S Motion for Entry of Decree of Divorce be and hereby is denied.

On July 14, 1992, a jury trial was conducted, but it resulted in a mistrial.[1]

On November 3, 1993, the trial court signed an "Order on Motion to Amend Temporary Orders" providing that "as additional support Wayman Chunn shall provide health insurance for the parties' children and Mrs. Chunn through Relator's employment and if not available through his employment, then Relator is ordered to purchase health insurance coverage as set out below."

Subsequently, the wife filed a motion for contempt alleging that relator had violated the order by failing to provide health insurance for her. In her motion, the wife requested that relator be assessed a fine not to exceed $500 and be committed to confinement for a period of not more than six months.

In March 1994, a hearing was held on the motion for contempt. The trial court subsequently signed an order holding relator in contempt for violating the court's order of November 3, 1993, and ordering relator to pay for the wife's health insurance by March 15, 1994. The order further stated that in the event relator failed to make the required payments, he was assessed a fine of $500 to be paid to the office of the district clerk by May 9, 1994. Furthermore, the order directed relator to appear before the court for a compliance hearing on May 9, 1994, later reset to May 17, 1994.

On May 17, 1994, the trial court found relator in contempt for failure to provide the health insurance by March 15 as ordered, and for non-payment of the $500 fine, and ordered relator confined in the county jail for a period of 180 days.

Relator was committed to confinement on May 17, 1994, and applied to this Court for a

writ of habeas corpus. This Court ordered relator released from jail, upon the posting of a bond, pending a final determination of the matter.

■ In his first three grounds for relief, relator complains that because he was already divorced, the trial court lacked subject matter jurisdiction to order him to provide health insurance for the wife. Relator asserts the order to provide health insurance is a form of illegal post-divorce alimony. Relator cites *Dunn v. Dunn*, 439 S.W.2d 830 (Tex.1969) for the proposition that the pronouncement of an agreed judgment by a court from the bench is effective as rendition of judgment in settlement of the rights of the parties.

In *Louwien v. McDowell*, 534 S.W.2d 421, 422 (Tex.Civ.App.—Dallas 1976, orig. proceeding), the Dallas court of appeals faced a similar issue and explained that the *Dunn* holding that an oral pronouncement was a valid judgment was right so long as the oral pronouncement was not set aside. The Dallas court went on to explain that under TEX. R.CIV.P. 306a, the trial court has until 30 days after a judgment is signed to set aside or otherwise change its judgment. *Id.* We agree with the *Louwien* court. In our case, because no divorce decree was signed, it was within the court's plenary jurisdiction to effectively set aside the oral pronouncement of divorce. Therefore, the parties are not divorced; they are still legally married.[2] The trial court had the jurisdiction and authority to grant the wife's motion for amended temporary orders to require relator to provide her health insurance.[3]

Accordingly, we overrule relator's grounds of relief one through three.

---

1. Relator subsequently brought mandamus proceedings in the First Court of Appeals, and then the Texas Supreme Court, requesting that the trial court be ordered to sign a final judgment in accordance with the terms of the February 1992 "Points of Agreement" memorandum. Mandamus relief was denied. The case is currently set for a jury trial on September 12, 1994.

2. There can be no final judgment of divorce until all issues, including property division and child custody, are finally disposed of. *Vautrain v. Vau-*

*train*, 646 S.W.2d 309, 315 (Tex.App.—Fort Worth 1983, writ dismissed); *Underhill v. Underhill*, 614 S.W.2d 178, 181 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

3. A divorce is not final until the completion of any appeal, and until then, a court ordered obligation to provide temporary alimony is enforceable. *Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 891 (Tex.App.—Houston [1st Dist.] 1988, no writ); TEX.FAM.CODE ANN. § 4.02 (Vernon 1993).

■ Under his *fourth ground of relief*, relator alleges he is restrained illegally and contends, in part, that the trial judge

> erred when he found relator in contempt of court for failure to comply with the court's order and when he imposed the 180–day jail punishment therefor *because* relator already had been adjudged in contempt of court and punished for noncompliance as to the insurance. (emphasis in original)

■ A writ of habeas corpus is a collateral attack on the trial court's order, and it is the relator's burden to demonstrate that the contempt order is void, not merely erroneous. *Ex parte Williams*, 704 S.W.2d 465, 468 (Tex. App.—Houston [1st Dist.] 1986, orig. proceeding). The relator may accomplish this by demonstrating that the order is void because it was either beyond the power of the court to issue such an order, or because the order deprived the relator of his liberty without due process of law. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980).

In the present case, prior to the March hearing, the wife filed a motion for contempt alleging relator had violated the trial court's order to provide the wife health insurance. In the order signed March 28, 1994, the trial court found relator in contempt for violating the order to provide the wife health insurance, and granted the following relief:

> It is ORDERED and DECREED that Respondent WAYMAN HENRY CHUNN, III, is in contempt of Court for failing and refusing to provide and pay for health insurance for Movant, LINDA LEE CHUNN.
>
> It is further ORDERED and DECREED that Respondent WAYMAN HENRY CHUNN, III, obtain, provide and pay for a health insurance policy for LINDA LEE CHUNN, and that such health insurance policy shall be provided to her on or before March 15, 1994.
>
> It is further ORDERED and DECREED that, if Respondent, WAYMAN HENRY CHUNN, III, does not provide a health insurance policy for LINDA LEE CHUNN on or before March 15, 1994, then it is the Order of this Court that he is assessed a fine of $500, and said sum of $500 shall be due and payable to the Dis-

trict Clerk of Fort Bend County, Texas, on or before 9:00 a.m. on May 9, 1994.

. . . .

*Compliance Date*

Respondent WAYMAN HENRY CHUNN, III, is hereby ORDERED to reappear before the 328th Judicial District Court of Fort Bend County, Texas, at 9:00 a.m. on May 9, 1993 for compliance of these Orders.

The order *did not* assess any period of confinement as punishment for the contempt, nor did the order state that if relator did not comply with the order by the compliance date, he would be subject to confinement. Rather, the order specifically notified relator that if he did not provide the ordered insurance by March 15, 1994, his penalty would be a fine of $500, to be paid by May 9, 1994.

When it was shown at the May 1994 compliance hearing that relator had not paid for the health insurance, the trial court attempted to increase the punishment it had previously adjudicated, from a fine to imprisonment. The trial court's order of May 17, 1994, states in pertinent part:

> [t]hat in a Temporary Order signed by this Court subsequent to a hearing on October 11, 1993, which properly appears on record in the Minutes of this Court, this Court ORDERED AND DECREED that health insurance shall be provided for LINDA LEE CHUNN and that it was the intent and purpose of the Court Order that WAYMAN HENRY CHUNN, III, provide and pay for health insurance for LINDA LEE CHUNN; and
>
> [t]hat this Court found that WAYMAN HENRY CHUNN failed and refused to comply with the Court Order by failing to provide and pay for a health insurance policy for LINDA LEE CHUNN; and
>
> [t]hat in a hearing on LINDA LEE CHUNN'S motion for contempt held on March 11, 1994, this Court further ORDERED WAYMAN HENRY CHUNN, III, to obtain, provide and pay for a health insurance policy for LINDA LEE CHUNN, and that such health insurance policy should be provided to her on or before March 15, 1994; and

[t]hat in said contempt hearing, this Court further ORDERED AND DECREED that, if respondent, WAYMAN HENRY CHUNN, III, did not provide a health insurance policy for LINDA LEE CHUNN on or before March 15, 1994, it would be the ORDER of this Court that he be assessed a fine of $500, and said sum of $500 would be due and payable to the District Clerk of Fort Bend County, Texas, on or before 9 a.m. on May 9, 1994; and [t]hat, on May 16, 1994, this Court found that WAYMAN HENRY CHUNN, III, failed and refused to obtain, provide, and pay for a health insurance policy for LINDA LEE CHUNN on or before March 15, 1994, nor did he pay the fine of $500 to the District Clerk of Fort Bend County, Texas, on or before 9 a.m. on May 9, 1994. . . .; and

[t]hat, for WAYMAN HENRY CHUNN'S failure to comply with this Court's Order, he is in contempt of this Court and that punishment therefor is fixed at 180 days' confinement in the Jail of Fort Bend County, Texas; . . . .;

■ As an element of due process, when a trial court assesses criminal punishment for contempt that is probated until the compliance hearing, the trial court may not impose punishment at the compliance hearing that is greater than was originally assessed. *Ex parte Balderas,* 804 S.W.2d 261, 263–64 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). Accordingly, in the present case, the trial court could not lawfully increase the punishment at the compliance hearing from a fine to imprisonment, for relator's contemptuous conduct committed prior to the March 11 hearing.

■ Further, any finding of contempt for conduct committed *after* the March 11, 1994, hearing would require additional notice by pleading and another hearing. In *Ex parte Vetterick,* 744 S.W.2d 598, 599 (Tex.1988), the Texas Supreme Court found due process to require that, in cases of contempt committed outside the presence of the court, the alleged contemnor receive full and unambiguous notification of the accusation of contempt. Such notice should be by show cause order or equivalent legal process personally served on the alleged contemnor, stating when, how, and by what means the party has been guilty of contempt. *Id.* at 599. Absent such notification, the contempt judgment is a nullity. *Ex parte Blanchard,* 736 S.W.2d 642, 643 (Tex.1987).

Because relator was not personally served with a show cause order or equivalent legal proceeding charging him with contempt for his failure to comply with the order to pay the insurance by March 15, and to pay the $500 fine by May 9, a judgment holding him in contempt for such failure, and punishing him for such failure, is a nullity. *Vetterick,* 744 S.W.2d at 599; *Blanchard,* 736 S.W.2d at 643; *Balderas,* 804 S.W.2d at 264. The order setting a compliance hearing is not a valid substitute for the notice required by due process. *Vetterick,* 744 S.W.2d at 599; *Blanchard,* 736 S.W.2d at 643; *Balderas,* 804 S.W.2d at 264.

Accordingly, we sustain relator's fourth ground for relief.

We grant the writ of habeas corpus and order relator discharged.