**Edgar L. HULL, Jr., Appellant,**

v.

**SOUTH COAST CATAMARANS, L.P., Aksano Catamarans, LLC, and James Babcock, Individually, Appellee.**

**No. 01–10–00724–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 12, 2011.

Christopher Douglas Collings, Tanya Yvette Niblett, The Collings Law Firm, PLLC, Houston, TX, for Appellant.

John S. Powell, The Powell Law Firm, Pearland, TX, Larry Walton, Law Office of Larry P. Walton, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

In this case, a buyer bought a new boat from a dealer. The buyer alleged that the boat was defective. The buyer sued the dealer, its sales representative, and the boat's manufacturer. A visiting judge presided over a trial of the case, and a jury returned a verdict in favor of the buyer. The defendants moved for a new trial. The district judge granted the defendants' motion for new trial based on the buyer's discovery violation and jury error. Subsequently, the district judge granted defendants' motions for summary judgment.

On appeal, the buyer, Edgar Hull, Jr., contends: (1) the district judge's order granting a new trial is void because the district judge did not have authority to rule on the motion as she did not preside at trial; (2) the district judge erred in granting the new trial because the discovery violations did not prejudice or surprise the defendants, and the claim of jury error fails as a matter of law, and (3) the district judge erred in granting the defendants' summary judgment motions. We hold that the order granting a new trial is not void, and the trial court did not abuse its discretion in granting a new trial, but it erred in granting the defendants' summary judgment motions because fact issues exist. We therefore affirm in part, reverse in part, and remand for a new trial.

## Background

### Underlying Facts

In September 2007, Hull purchased a new boat, an Aksano F–18 watercraft, from South Coast Catamarans, L.P., a boat dealer. James Babcock, a sales representative of South Coast, assisted Hull in the purchase. In late January 2008, Aksano Catamarans, LLC, the boat's manufacturer, delivered the boat to a third party facility to install an engine and other equipment. In February 2008, a truck driver, hired by Hull to deliver the boat to him from the facility, noticed that the boat had cracks, small holes, and dents in its fiberglass. He contacted Hull about the boat's condition, and Hull in turn notified Aksano about the boat. According to Hull, Aksano told him to take the boat to a fiberglass repair shop to get an estimate on any repairs needed for it. Hull asked Aksano for an authorized repair person to examine the boat, but Aksano stated that it did not have one in the area.

A fiberglass technician examined the boat, and he found that little to no fiber-

glass existed behind several small holes in the boat's deck. According to the technician, the fiberglass was so thin that he was able to push his finger through the side of the boat. The technician estimated that it would cost $3,000 to $5,000 to determine the extent of the fiberglass problem. On February 15, Hull notified Aksano and Babcock that he refused to accept the boat based on its condition. He informed Aksano of the estimate from the technician, but stated that he expected a full refund. In response, Aksano told Hull that it would fix any problems with the boat if it was determined that Aksano caused them.

Hull hired a surveyor to inspect the boat. The surveyor concluded that the boat's poor structural integrity precluded its safe use. On February 27, Hull informed Aksano and Babcock of the surveyor's findings and again demanded a full refund plus other costs he had incurred in relation to the boat. He refused to accept repair of the boat or a replacement. According to Hull, both Aksano and Babcock refused to examine the boat. Babcock told Hull that he no longer had anything to do with the boat, and that South Coast was not involved in the boat's purchase because Hull bought it directly from Aksano. Hull's phone calls to South Coast went unanswered. Hull claimed that neither Aksano nor Babcock offered to repair the boat. According to Hull, Aksano offered to help him resell the boat.

*Procedural History*

In March 2008, Hull sued Aksano, South Coast, and Babcock for violations of the Texas Deceptive Trade Practices Act, fraud, negligent misrepresentation, breach of contract, negligence, and breach of warranty. The district judge conducted numerous hearings on discovery and other pretrial matters in the case. She also signed a discovery and docket control order. In February 2010, a visiting judge presided over the trial of the case, by order of assignment under section 74.056 of the Texas Government Code. *See* Tex. Gov't Code Ann. § 74.056 (West 2005). The order of assignment was for five days beginning February 8, 2010, but was to continue "as may be necessary for the assigned Judge to dispose of any accumulated business and to complete trial of any cases . . . begun during the period, and to pass on motions for new trial and other matters growing out of accumulated business or cases tried by the Judge."

After jury selection, the visiting judge ruled on a pretrial motion filed by South Coast. South Coast had moved to exclude testimony by one of Hull's expert witnesses because Hull had violated rule 194.2(f) of the Texas Rules of Civil Procedure and the trial court's discovery and docket control order. According to South Coast, Hull violated rule 194.2(f) by failing to provide any reference to the general substance, mental impressions or opinions of the expert, and it had violated the discovery and docket control order by failing to provide a written report prepared by the expert. *See* Tex.R. Civ. P. 194.2(f). The discovery and docket control order provided in relevant part:

> Any party designating a testifying expert witness is **ORDERED** to provide no later than the dates set for such designation, the information set forth in Rule 194.2(f) and a written report prepared by the expert setting the substance of the expert[']s opinions.

The visiting judge denied the motion, but required Hull to provide defendants with a written report and to make the expert available for deposition. Hull produced the report on the second day of the trial. South Coast again objected to the expert when Hull called him to testify.

The jury returned a unanimous verdict in favor of Hull on all of his claims and

awarded him damages and attorney's fees. The district judge received the jury's verdict and made an entry of judgment on the record. After the verdict, Hull moved for entry of final judgment, but neither the district judge nor the visiting judge signed a written judgment. Defendants moved for judgment notwithstanding the verdict, which the district judge denied. Defendants then moved for a new trial. They urged the trial court to grant the motion because (1) the testimony of Hull's expert violated rule 194.2(f) of the Texas Rules of Civil Procedure and the trial court's discovery and docket control order, and (2) juror error existed. According to one juror, the jury did not understand that the same ten jurors had to agree to each question, and it would have been impossible for the same ten jurors to agree on each answer. Hull filed a response, contending that the district judge could not grant the motion because she did not hear any of the evidence at trial. After a hearing on the motion, the district judge ordered a new trial. In the order, the district judge specified her reasons for granting the motion as the violation of the court's discovery and docket control order and a juror error. Subsequently, the defendants filed a traditional motion for summary judgment, and Babcock, individually, filed a no-evidence motion for summary judgment. The district judge granted the motions and entered a final judgment.

**Discussion**

*Motion for New Trial*

Hull asserts that the trial court's order granting the defendants' motion for a new trial is void because the district judge did not have authority to rule on the motion. According to Hull, only the visiting judge had the authority to hear and rule on the motion because the order appointing the visiting judge precludes the district judge

from presiding over the case. Hull further contends that the district judge lacked the authority to reverse the visiting judge's ruling admitting the expert's testimony, where the visiting judge had good cause to allow it.

*1) Motions for New Trial*

■ "New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall direct." Tex.R. Civ. P. 320. In a motion for new trial, a party asks the trial court to correct trial error by granting a new trial. *Smith v. Brock*, 514 S.W.2d 140, 142 (Tex.Civ.App.-Texarkana 1974, no writ); see also *Barry v. Barry*, 193 S.W.3d 72, 74 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("A motion for new trial must, by its very nature, seek to set aside an existing judgment and request relitigation of the issues."). "When a motion for new trial is granted, 'the case shall be reinstated upon the docket of the trial court and stand for trial the same as though no trial had been had.'" *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex.2005) (quoting *Wichita Falls Traction Co. v. Cook*, 122 Tex. 446, 60 S.W.2d 764, 768 (1933)).

■ A trial court has broad discretion in granting new trials. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 206 (Tex.2009). With very limited exceptions, an order granting a motion for new trial rendered within the period of the trial court's plenary power is not reviewable on appeal, either by direct appeal from the order or from a final judgment rendered after later proceedings. *See Wilkins*, 160 S.W.3d at 563; *Cummins v. Paisan Constr. Co.*, 682 S.W.2d 235, 236 (Tex.1984) (per curiam). The Texas Supreme Court has recognized three instances in which a Texas appellate court has overturned the trial court's grant

of a new trial: (1) when the trial court's order was wholly void, (2) when the trial court specifically based its new trial order on an irreconcilable conflict in answers to jury questions, and the answers were not in conflict, and (3) when the trial court did not specifically state its reasons for granting new trial. *See Wilkins,* 160 S.W.3d at 563; *In re Columbia Med. Or.,* 290 S.W.3d at 209, 213; *see e.g., In re Dickason,* 987 S.W.2d 570, 571 (Tex.1998) (granting mandamus to set aside void order granting motion for new trial because order was signed after court lost plenary power).

*2) Authority of the Visiting Judge and District Judge*

■ The presiding judge of an administrative region is authorized to assign judges in the region to "try cases and dispose of accumulated business." TEX. GOV'T CODE ANN. § 74.056(a), (b) (West 2005). A judge sitting by order of assignment has all the powers of the judge of the court to which he is assigned. TEX. GOV'T CODE ANN. § 74.059(a) (West 2005). Generally, visiting judges are assigned either to a particular case or for a period of time. *In re Republic Parking Sys., Inc.,* 60 S.W.3d 877, 879 (Tex.App.-Houston [14th Dist.] 2001, no pet.). The terms of the assignment order controls the extent of the visiting judge's authority and when it terminates. *Ex parte Eastland,* 811 S.W.2d 571, 572 (Tex.1991) (per curiam). Typical assignment orders provide that the visiting judge's authority terminates on a date specified in the assignment order, or upon the occurrence of a specific event such as the signing of a judgment or ruling on a motion for new trial. *Beard v. Beard,* 49 S.W.3d 40, 49 (Tex.App.-Waco 2001, pet. denied). Here, the assignment order did not assign the visiting judge to a particular case. Instead, the order authorized the visiting judge to sit on the court for a period of five days, to complete any trial begun during this period, and to rule on any matters associated with those trials, including motions for new trial. Because the trial of this case began during the visiting judge's assigned time period, she was authorized by the terms of the order to rule on the motion for new trial.

■ More than one judge, however, may exercise authority over a single case. *Davis v. Crist Indus., Inc.,* 98 S.W.3d 338, 343 (Tex.App.-Fort Worth 2003, pet. denied) (holding that visiting judge did not have exclusive authority to try case which would have precluded sworn and elected judge from sitting on final days of trial); *see also* TEX. CONST. art. V, § 11 (district judges may exchange districts or hold court for each other when they deem it expedient). Specifically, Texas Rule of Civil Procedure 330(g) provides:

> When in such counties there are two or more district courts having civil jurisdiction, any judge may hear any part of any case or proceeding pending in any said courts and determine the same, or may hear and determine any question in any case, and any other judge may complete the hearing and render judgment in the case.

TEX.R. CIV. P. 330(g).

Hull relies on *W.C. Banks, Inc. v. Team, Inc.,* to assert an exception to this rule. *See* 783 S.W.2d 783, 785 (Tex.App.-Houston [1st Dist.] 1990, no writ). In *W.C. Banks,* a visiting judge conducted a bench trial and made a docket entry indicating a judgment for the plaintiff, but made neither findings of fact nor formally rendered judgment. *Id.* at 784. The district judge later rendered judgment for the plaintiff without hearing any of the evidence. *Id.* at 785. We reversed, holding that rule 330(g) does not authorize a district judge who heard none of the case to render judgment in a bench trial. *Id.* at 785–86.

But other cases from our court indicate that the exception to the free exchange of benches is a narrow one. *See Hot–Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.,* 333 S.W.3d 719, 734 (Tex.App.-Houston [1st Dist.] 2010, pet. filed) (holding that award of attorney's fees in final judgment was proper even though judge who signed final judgment did not preside at trial because trial was to jury, and trial court did not have to determine any facts before entering judgment); *Enax v. Noack,* 12 S.W.3d 609, 614 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (holding that district court, to which case had been transferred, could enter final judgment even though it did not hear any evidence because jury reached verdict in case before it was transferred); *Schneider v. Acousti Eng'g Co. of Fla.,* No. 01–92–00921–CV, 1993 WL 415481, at *2 (Tex.App.-Houston [1st Dist.] Oct. 14, 1993, no writ) (mem. op., not designated for publication) (holding that it was proper for district judge to grant motion for new trial on attorney's fees even though visiting judge presided at trial because district judge had heard evidence on attorney's fees after trial and entered order granting them).

### 3) Analysis

Here, the district judge granted Aksano's motion for new trial because of Hull's violations of its docket control order. Although the district judge did not hear the evidence at trial, she had extensive involvement in the discovery phase of the case. She had presided over numerous hearings regarding it, ruled on discovery and other pretrial motions, and signed the docket control order, which was part of the basis of the motion for new trial. In addition, the district judge conducted a hearing on the motion, and Hull submitted a written response to defendants' motion in which he argued that the visiting judge properly allowed the expert to testify, at-taching applicable excerpts from the trial to support his position. We hold that it was proper for the district judge to rule on the motion for new trial on an issue about which she had heard argument and evidence and pertained to the enforcement of her prior order. *See* TEX.R. CIV. P. 330(g); *Schneider,* 1993 WL 415481, at *2.

■ Hull further contends that the order granting the new trial is void because neither the district judge nor the visiting judge entered a final judgment after the jury's verdict. A trial court, however, can grant a new trial at any time before it has signed a final judgment. *See Louwien v. Dowell,* 534 S.W.2d 421, 422 (Tex.Civ.App.-Dallas 1976, no writ); *see also Ex parte Chunn,* 881 S.W.2d 912, 915 (Tex.App.-Houston [1st Dist.] 1994, no writ). Accordingly, we hold that the district judge's order granting a new trial is not void.

Finally, Hull challenges the district judge's order granting new trial on its merit, contending that: (1) an expert can testify without an expert report under Texas law; (2) South Coast had cross-designated all of Hull's experts; (3) Hull had made the basis of the expert's opinion available to defendants, and (4) the admission of the expert's testimony did not prejudice or surprise defendants. A trial court has broad discretion in granting a new trial, and the supreme court has held that the order granting a new trial is reviewable on appeal only in three very limited circumstances. *See In re Columbia Med. Ctr.,* 290 S.W.3d at 209, 213; *Wilkins.,* 160 S.W.3d at 563. Here, none of the three circumstances apply.

■■ In addition, Hull fails to establish that the district judge abused her discretion in granting the motion for a new trial. The purpose of the discovery rules is to encourage full discovery of the issues and facts before trial so that parties can make realistic assessments of their respective

positions, in order to facilitate settlements and to prevent trial by ambush. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). Parties are entitled to rely on a trial court's pre-trial order. *Dennis v. Haden*, 867 S.W.2d 48, 51 (Tex.App.-Texarkana 1993, writ denied) (holding trial court abused its discretion in allowing expert to testify when party had failed to provide expert report required by pre-trial order); *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d 470, 477–78 (Tex.App.-Dallas 1987, writ denied) (holding trial court abused its discretion in allowing expert to testify in excess of limitation placed on expert by pre-trial order). Here, Hull did not submit a written report until two days into trial, and the defendants both timely objected and asserted harm from the late report. We hold that the district judge was within her discretion in granting the new trial to remedy the alleged harm caused by the late report. *Cf. In re Columbia Med. Ctr.*, 290 S.W.3d at 213 (finding that trial court acted arbitrarily and abused its discretion in failing to give reasons for granting motion for new trial).

*Summary Judgment*

The case was never re-tried, however. The trial court instead granted summary judgment to the defendants after it granted the new trial. Hull complains the trial court erred in doing so. In their traditional motion for summary judgment, the defendants contend that Hull failed to provide notice of the defect in the boat or an opportunity for them to cure the defect. In his no-evidence motion, Babcock contends that he is entitled to summary judgment on all claims against him because an agent cannot be personally liable for the claims or debts incurred on behalf of a disclosed principal. Babcock asserts that

he acted as an agent of disclosed principals, either Aksano or South Coast.

*1) Standard of Review*

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). After an adequate time for discovery, a party may move for no-evidence summary judgment if there is no evidence of one or more essential elements of a claim or defense on which the adverse party bears the burden of proof at trial. Tex.R. Civ. P. 166a(i). Once a party moves for no-evidence summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact on each element specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). We review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)).

*2) Notice and Opportunity to Cure*

To maintain an action for a breach of warranty, a buyer must notify the seller that a breach occurred within a reasonable time after he discovers or should have discovered any breach. *See* Tex. Bus. & Com.Code Ann. § 2.607(c)(1) (West 2009). The burden of alleging and proving proper notice is on the buyer. Tex. Bus. & Com. Code Ann. § 2.607(c)(1); *U.S. Tire–Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 200 (Tex.App.-Houston [1st Dist.] 2003, pet.

denied) (holding that notice requirement is better described as condition precedent for buyer's cause of action than affirmative defense). Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty. *See Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex.App.-Dallas 1996, no writ).

 A general expression of the buyer's dissatisfaction, however, may be sufficient to comply with section 2.607. *U.S. Tire–Tech, Inc.*, 110 S.W.3d at 201. And, ordinarily, notice is a question of fact to be determined by the trier of fact; it becomes a question of law only if no room for ordinary minds to differ exists. *Carrol Instr. Co. v. B.W.B. Controls Inc.*, 677 S.W.2d 654, 657 (Tex.App.-Houston [1st Dist.] 1984, no writ).

 Here, the defendants received notice as required by section 2.607. Hull notified the defendants that problems existed with the boat's fiberglass in February 2008. But the defendants claim that Hull did not provide them with an opportunity to cure the boat's defects. The defendants point out that Hull quickly asked for a refund of his money and later stated that he would not accept repair or replacement of the boat. But record evidence exists that the defendants took no action to cure the boat's defects after Hull notified them of the problem. According to Hull, Babcock said that he and South Coast no longer had anything to do with the boat. No one besides Babcock at South Coast would return his phone calls. Aksano told Hull it would pay for any repairs for damage it caused. Aksano, however, refused to examine the boat. It disputed the damage reports Hull sent it. It made no attempt to repair the boat and no specific offers to pay for repairs or to replace it. According to Hull, Aksano only offered to help him resell the boat. *Cf. Leggett v.*

*Brinson*, 817 S.W.2d 154, 158 (Tex.App.-El Paso 1991, no writ) (holding that buyer provided reasonable opportunity for seller to cure defects in refrigerator, where seller's agent attempted to repair and replace unit). Further evidence exists that repairs would not have been adequate to cure the defects, including a surveyor's report that stated that the boat was unsafe. We hold that issues of material fact exist as to whether Hull provided the defendants an opportunity to cure the boat's defects.

 In addition, courts have applied the section 2.607 bar only to UCC breach of warranty claims. *See Lochinvar Corp.*, 930 S.W.2d at 189 (holding that failure to notify the seller under 2.607(c)(1) of a breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty). *Compare Sw. Lincoln–Mercury, Inc. v. Ross*, 580 S.W.2d 2, 4 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ) (holding that where breach of warranty is foundation of claim for treble damages under DTPA, buyer must notify seller that breach of warranty has occurred, in accordance with section 2.607(c)(1)) *with Mobil Min. & Minerals Co. v. Texas Auto Pool, Inc.*, 01–91–00093–CV, 1992 WL 211503, at *6 (Tex.App.-Houston [1st Dist.] Aug. 31, 1992, writ denied) (mem. op., not designated for publication) (holding that section 2.607(c)(1) does not bar non-breach of DTPA warranty claims). Section 2.607, therefore, would not be a bar to Hull's fraud, negligence, negligent misrepresentation, breach of contract, and non-breach of DTPA warranty claims. We conclude that the trial court erred in granting the defendants' traditional summary judgment motion.

### 3) Agent Liability

 An agent is personally liable for his own fraudulent or tortious acts, even when acting within the course and

scope of his employment. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex.2002); *see also* RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."). The plain language of the DTPA is in harmony with this rule. *Miller*, 90 S.W.3d at 717. "If there is evidence that the agent personally made misrepresentations, then that agent can be held personally liable." *Id.*

 Nevertheless, an agent who contracts for a disclosed principal is generally not liable on the contract. *Mediacomp, Inc. v. Capital Cities Commc'n Inc.*, 698 S.W.2d 207, 211 (Tex.App.-Houston [1st Dist.] 1985, no writ). An agent may be liable if the agent substitutes himself for the principal, or if the agent consents to liability in addition to the principal. *Id.* Such consent can be express, or it can arise impliedly from the circumstances. *Id.*

 Here, for Babcock to prevail on his no-evidence summary judgment motion, he had to show no evidence existed for one or more elements of Hull's fraud, negligence, negligent misrepresentation, breach of contract, DTPA, and breach of warranty claims. Babcock based his motion solely on the position that he could not be personally liable because he was an agent of a disclosed principal. In regard to the contract claim, Hull presented no evidence that Babcock expressly agreed to be held individually liable on the contract for the boat in the event that either Aksano or South Coast breached it. The sales order for the boat lists Babcock as a representative. As such, Babcock is not con-

tractually liable to Hull for breach of contract.

 However, Babcock failed to allege that no evidence exists to support one or more elements of Hull's fraud, negligence, negligent misrepresentation, breach of warranty, and DTPA claims. Even if Babcock was an agent of a disclosed principal, tort causes of action exist if the evidence supports elements of these claims against him. *See Miller*, 90 S.W.3d at 717; *see also Cimarron Hydrocarbons Corp. v. Carpenter*, 143 S.W.3d 560, 565 (Tex.App.-Dallas 2004, pet. denied) (holding that corporate agent could be liable for negligence, DTPA, and breach of warranty claims against him in his individual capacity). We conclude that the trial court erred in granting Babcock's no-evidence summary judgment motion in regard to Hull's fraud, negligence, negligent misrepresentation, breach of warranty, and DTPA claims because Babcock did not assert that any element of these claims lacked evidence, and he is not entitled to judgment on them. We affirm the trial court's summary judgment in favor of Babcock on Hull's breach of contract claim.

## Conclusion

We hold that the trial court did not abuse its discretion in granting a new trial. We affirm the trial court's summary judgment in favor of Babcock on Hull's breach of contract claim. We reverse the summary judgment in all other respects and remand for a trial.