COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS DEPARTMENT OF TRANSPORTATION, | § | No. 08-09-00209-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 271st Judicial District Court |
| | § | |
| | | of Wise County, Texas |
| WELDON MACKEY, | § | |
| | | (TC# 08-05-396) |
| Appellee. | § | |

**O P I N I O N**

In two issues, Texas Department of Transportation ("TxDOT") claims the trial court erred in entering a final judgment in favor of Appellee Mr. Weldon Mackey. On appeal, TxDOT argues the court committed reversible error in its instruction to the jury on its duty of care in that the stated duty was an ordinary negligence standard of care instead of a premises liability standard of care, and that even if a premises liability charge had been submitted to the jury, there was no evidence to support at least two essential elements of Mr. Mackey's claim.

On July 31, 2006, Mr. Weldon Mackey was riding his motorcycle on Highway 21 in Bryan, Texas. After stopping briefly at the intersection of Highway 21 and Highway 6, Mr. Mackey drove through the intersection, and as he did, the tires slid from under him, and he lost control and crashed onto the road. It was later determined that a TxDOT truck, driven by TxDOT employee Jeffery Massey, had passed through the same intersection earlier and leaked hydraulic fluid onto the roadway, which in turn resulted in Mr. Mackey's crash. Specifically, the fluid came out of a failed pipe fitting, which Martin Truck Enterprises had installed inside the

truck. The morning of the incident, Mr. Massey's employer instructed him to drive the truck and its attached trailer from Buffalo, Texas to Bryan, Texas in order to pick up a pneumatic roller, and then to return to Buffalo. On the way up to Bryan, Mr. Massey stopped in Flynn, Texas to drop off some barricades, and after doing so, he made a 180-degree turn through a ditch to get back onto the roadway. It was not until Mr. Massey reached the TxDOT office in Bryan that he realized his truck was leaking hydraulic fluid, and he believed this was the result of his earlier driving into the ditch before making the u-turn.

Mr. Mackey subsequently brought action against TxDOT and Martin Truck Enterprises for his injuries. He settled with Martin Truck Enterprises, and the court entered a partial agreed take nothing judgment, which ordered that Mr. Mackey and Progressive County Mutual Insurance Company[1] ("Progressive") recover nothing from Martin Truck Enterprises.[2] At trial, TxDOT moved for a directed verdict and an instructed verdict on the basis that there was no evidence to support the essential elements of Mr. Mackey's claim, which it argued should be governed by premises liability law, but the trial court denied the motion. During a charge conference, TxDOT argued that the jury charge should be based on premises liability law instead of ordinary negligence, as proposed by Mr. Mackey. The trial court, however, granted Mr. Mackey's requested jury charge, and denied TxDOT's proposed charge. On May 14, 2009, the trial court submitted the dispute to a jury based upon three questions. The first question dealt with the issue of duty and causation. As submitted to the jury, question one, along with the

---

[1] In July 2008, Progressive intervened in the suit and asserted its subrogation rights as the insurer of Mr. Mackey's automobile in the event of a collision. In May 2009, Progressive filed a notice of nonsuit with regard to its claims.

[2] Martin Truck Enterprises is not a party to this appeal.

jury's verdict provided as follows:

QUESTION NO. 1:

Did the negligence, if any, of the persons named below proximately cause the injury in question?

Answer: 'Yes' or 'No' for each of the following:

'Negligence' means failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

'Ordinary care' means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

'Proximate cause' means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

a.    Texas Department of Transportation:  Yes

b.    Weldon Mackey:  No

c.    Martin Truck Enterprises of Boyd, Inc.:  Yes

As a result, the jury returned a verdict finding TxDOT and Martin Truck Enterprises proximately caused the injury under an ordinary negligence standard of care, and that TxDOT was 90 % at fault, while Martin Truck Enterprises was 10 % at fault. The jury awarded a total amount of $761,000 in damages to Mr. Mackey. Mr. Mackey subsequently filed a motion for entry of final judgment, while TxDOT filed a motion for judgment notwithstanding the verdict and objection to Mr. Mackey's proposed final judgment. The trial court granted Mr. Mackey's

motion and overruled TxDOT's motion, and in its June 9, 2009 final judgment, the court ordered that Mr. Mackey recover $250,000 plus interest and costs from TxDOT.[3] TxDOT subsequently filed a notice to appeal this final judgment.

In Issue One, TxDOT claims the trial court erred by overruling its objection to the jury charge submitted by Mr. Mackey, rejecting TxDOT's proposed jury charge, and accepting Mr. Mackey's proposed jury charge. TxDOT asserts Mr. Mackey's jury charge improperly required the jury to find liability on an ordinary negligence standard of care. It argues that the applicable duty in this case should be based on premises liability law because Mr. Mackey's claim involved the presence of hydraulic fluid on a TxDOT road. TxDOT also argues that because Mr. Mackey failed to obtain jury findings on the essential elements of his claim, TxDOT is entitled to a take nothing judgment or dismissal.

Whether a condition is a premises defect for purposes of determining a governmental unit's duty to a personal-injury claimant is a question of law, which is reviewed *de novo*. *See, e.g., Tex. Dept. of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009); *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999)(per curiam).

Generally, sovereign immunity protects the State against lawsuits for money damages, unless the State has consented to suit. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the state, including counties, cities, and school districts, unless that

---

[3] The Texas Tort Claims Act limits the State's liability for the bodily injury or death of a person to the "maximum amount of $250,000." TEX.CIV.PRAC.&REM.CODE ANN. § 101.023(a).

immunity has been waived.  *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 283 (Tex. 1996).

The Texas Torts Claim Act ("TTCA") establishes a limited waiver of this immunity, and authorizes suits to be brought against governmental units in certain narrowly-defined circumstances.  *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *see Dallas County MHMR v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).  Under the TTCA, governmental immunity is waived for property damage caused by the negligence of a governmental employee acting in the course and scope of his employment, if the damage arises from the operation or use of a motor-driven vehicle or motor-driven equipment.  TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(1)(A)(West 2011).

To the extent that Mr. Mackey asserted claims under the TTCA, the Act waives the immunity of a governmental unit, such as TxDOT, from liability and suit in three narrowly defined areas:  (1) property damage and personal injury caused by the use of publicly owned automobiles; (2) personal injury caused by a condition or use of tangible personal or real property; and (3) claims arising out of premises defects.  TEX.CIV.PRAC.&REM.CODE ANN. § 101.021, § 101.022, § 101.025; *Miranda*, 133 S.W.3d at 225.

Section 101.021 provides for the waiver of a governmental unit's sovereign immunity in the first two aforementioned areas.  TEX.CIV.PRAC.&REM.CODE ANN. § 101.021.  Specifically, Section 101.021 provides:

A governmental unit in the state is liable for:

(1)      property damage, personal injury, and death proximately caused by the

wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A)     the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B)     the employee would be personally liable to the claimant according to Texas law; and

(2)     personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC.&REM.CODE ANN. § 101.021.

Section 101.022 of the TTCA provides for the waiver of sovereign immunity with respect to claims arising from premises and special defects. TEX.CIV.PRAC.&REM.CODE ANN. § 101.022. This section provides:

(a)     Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b)     The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.

(c)     If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.

TEX.CIV.PRAC.&REM.CODE ANN. § 101.022.

To recover under a negligent activity theory, the injured party must have been injured by, or as a contemporaneous result of, the activity itself, not by a condition the activity created. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997); *Keetch v. Kroger Co.*,

845 S.W.2d 262, 264 (Tex. 1992); *Carbonara v. Tex. Stadium Corp.*, 244 S.W.3d 651, 657 (Tex.App.--Dallas 2008, no pet.). Negligent activity and premises defect are independent theories of recovery. *Olivo*, 952 S.W.2d at 529. The Texas Supreme Court has held: "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). "Although a species of negligence, premises liability cases are predicated on a property possessor's failure to warn or make safe dangerous or defective conditions on property; negligent activity cases arise from contemporaneous actions or omissions in the conduct of people." *Smith*, 307 S.W.3d at 788. Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity. *Keetch*, 845 S.W.2d at 264.

Whether a condition is a premises defect is a legal question. *Tex. Dept. of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex. 2002). In the recent decision of *Del Lago Partners, Inc. v. Smith*, the Texas Supreme Court summarized the distinctions between premises liability claims and negligent activity claims based on their opinions:

> Opinions of [the Texas Supreme Court] consistently illustrate that premises liability claims arise from physical conditions or defects on property, including:
>
> • A pothole in a dirt road allegedly causing a driver's neck injury, *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764-65 (Tex. 2009);
>
> • Ice from a soft drink dispenser making a grocery store floor slippery, *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407, 409 (Tex. 2006);
>
> • An unstable metal and wood platform accessing a storage shed, *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 98-99 (Tex. 2000);

• Leaking water making a basketball court slippery, *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536-37 (Tex. 1996);

• Store abduction occasioned by premises owner's disconnection of existing security alarm devices, poor external lighting, and failure to have two clerks on a late night shift, *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 457, 459 (Tex. 1992);

• Plant spray making a floor slick, *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992);

• Grapes from a self-service grape bin falling on the floor and making a grocery store floor slippery, *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 297 (Tex. 1983);

• An unlit apartment stairwell where there was no other exit route, *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 513-14 (Tex. 1978);

• Misapplication of wax making a floor dangerously slick, *State v. Tennison*, 509 S.W.2d 560, 561 (Tex. 1974);

• Soapy foam making a spa floor slippery, *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 453-54 (Tex. 1972);

• Showroom rug alleged to be a tripping hazard, *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 753 (Tex. 1970); and

• A decayed wooden floor in a building through which a guest fell, *Kallum v. Wheeler*, 129 Tex. 74, 101 S.W.2d 225, 226-27 (Tex.Com.App. 1937).

In contrast to physical conditions, [the Texas Supreme Court has] recognized that negligent activity claims arise from:

• Failure to warn taxi drivers not to carry guns, *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 524-25 (Tex. 1990);

• Independent contractor's operation of a mechanical pump on property, *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 628, 631 (Tex. 1976); and

• Failure to remove 'rowdy' patrons before one such patron allegedly threw a bottle injuring another patron in a theater, *E. Tex. Theatres, Inc. v. Rutledge*, 453 S.W.2d 466, 467-68 (Tex. 1970).

*Smith*, 307 S.W.3d at 790-91.

In *Texas Dept. of Parks & Wildlife v. Miranda*, the Texas Supreme Court refused to allow the plaintiff to "circumvent the heightened standards of a premises defect claim contained in section 101.022 [of the TTCA] by re-casting the same acts as a claim relating to the negligent condition or use of tangible property." *Miranda*, 133 S.W.3d at 233. Once a claim is determined to be that of a premises defect under Section 101.022, the claimant is limited to the provisions delineated by the section on premises defects, and may not assert a general negligence theory. *Id*., *citing State v. Estate of Horton*, 4 S.W.3d 53, 54 (Tex.App.--Tyler 1999, no pet.); *City of San Antonio v. Parra*, 185 S.W.3d 61, 63 (Tex.App.--San Antonio 2005, no pet.).

Mr. Mackey contends that Sections 101.021(1)(b) and (2) of the TTCA apply in this case in that the nexus requirement under Section 101.021(1) was satisfied because the hydraulic fluid leak from the TxDOT truck and his injuries were "virtually contemporaneous," and because the TxDOT truck was "being put to 'practical use' as a result of the purpose for which it was being used and operated when the hydraulic leak occurred . . . ." TxDOT, meanwhile, asserts that only Section 101.022 applies because Mr. Mackey's claim involved defective premises.

We agree with TxDOT and disagree with Mr. Mackey. This case was tried and submitted to the jury as an ordinary negligence case under Sections 101.021(1) and 101.021(2), instead of a premises liability case, based on Mr. Mackey's complaint that Mr. Massey negligently failed to disconnect the hoses before leaving Buffalo, Texas, the chaffing and pinching of the hoses that resulted from Mr. Massey's u-turn near Flynn, Texas, and the condition and use of the truck. However, the evidence shows that Mr. Mackey's injuries were not directly related to the activity itself--the employment of the TxDOT truck–instead, his injuries were the result of the hydraulic

leak, which created the slippery condition on Highway 21. Because Mr. Mackey's case did not involve the contemporaneous actions or omissions in others' conduct, and his injuries were caused by a condition created by the employment of the TxDOT truck, namely the consequential leakage of hydraulic fluid from the vehicle, the negligent activity theory of liability is not applicable in this case, and Mr. Mackey is limited to a premises defect theory of liability. *See Keetch*, 845 S.W.2d at 264; *Lucas v. Titus County Hosp. Dist./Titus County Mem'l Hosp.*, 964 S.W.2d 144, 153 (Tex.App.--Texarkana 1998, pet. denied). Moreover, since Mr. Mackey's claim in this case were those of premises defect, under *Miranda*, he is limited to bringing suit under Section 101.022 of the TTCA, and may not assert a general negligence theory. *See Miranda*, 133 S.W.3d at 233. The trial court, however, over TxDOT's objection, submitted to the jury a charge with an ordinary standard of care. The court overruled TxDOT's objection that a premises defect charge with a licensee standard was the proper charge under the evidence, and refused TxDOT's proffered premises defect charge that set forth the elements of liability under that theory. As such, the jury was improperly charged under a negligent activity theory, rather than a premises liability theory. Accordingly, we sustain Issue One.

In Issue Two, TxDOT argues that even if a premises liability charge had been submitted to the jury, and even if the jury had found against TxDOT based on such a charge, this Court should still render a take nothing judgment or dismiss the case on the grounds that there was no evidence to support at least two essential elements of Mr. Mackey's claim.

In determining a "no evidence" issue, we are to consider only the evidence and inferences that tend to support the finding of the disputed fact--unless a reasonable juror could not give credit to such evidence or inferences. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.

-10-

2005). We are to disregard all evidence and inferences to the contrary to the disputed fact--

unless a reasonable juror could not disregard such evidence or inferences. *Id.* But we are not to

weigh the evidence or make our own credibility determinations. *Bradford v. Vento*, 48 S.W.3d

749, 754 (Tex. 2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *In

re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of

evidence is legally sufficient to support the finding. *Cont'l Coffee*, 937 S.W.2d at 450; *Leitch v.

Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the

evidence furnishes some reasonable basis for differing conclusions by reasonable minds about

the existence of a vital fact. *Rocor Intern., Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262

(Tex. 2002).

TxDOT asserts that Mr. Mackey offered no evidence at trial to satisfy two elements of a

premises defect claim, including proof that TxDOT had actual or constructive knowledge of the

condition prior to the incident, and that TxDOT failed to exercise ordinary care to protect

Mr. Mackey from danger by both failing to adequately warn him of the condition, and failing to

make the condition reasonably safe.

To establish liability in a premises defect case, a licensee must prove that:

(1)     a condition of the premises created an unreasonable risk of harm to the
        licensee;

(2)     the owner actually knew of the condition;

(3)     the licensee did not actually know of the condition;

(4)     the owner failed to exercise ordinary care to protect the licensee from
        danger;

(5)     the owner's failure was a proximate cause of injury to the licensee.

-11-

*State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

As such, Mr. Mackey was required to obtain findings that TxDOT, as the premises owner of the highway where the incident occurred, had actual knowledge of the dangerous condition, and that he did not. *See Tex. Dep't. Of Transp. v. Gutierrez*, 284 S.W.3d 848, 850 (Tex. 2009) (per curiam); *Payne*, 838 S.W.2d at 237. Section 101.022(a) of the TTCA limits the government's duty to prevent injury from premises defects to those of which it has actual knowledge. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.022(a)("Except as provided in Subsection (c) [pertaining to toll roads], if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises."); *Payne*, 838 S.W.2d at 237 ("[A] licensee must prove that the premises owner actually knew of the dangerous condition, while an invitee need only prove that the owner knew or reasonably should have known."). Mr. Mackey was also required to establish that TxDOT failed to adequately warn of the dangerous condition, and failed to make the condition reasonably safe. *See Payne*, 838 S.W.2d at 237; *Olivo*, 952 S.W.2d at 527.

The evidence at trial showed that Mr. Massey did not know of the leak until after he returned to the Bryan office, at which point Mr. Mackey's incident on Highway 21 had already occurred. Prior to leaving Buffalo, Texas for Bryan, Texas, Mr. Massey inspected his truck and did not observe any leaking. After going through the intersection between Highway 21 and Highway 6, where the incident occurred, Mr. Massey went directly to the TxDOT district office in Bryan, which was less than a quarter mile away from that intersection. Upon arrival at the office, he drove into the yard and discovered the hydraulic leak, and so he asked Mr. Walsh

Parnell, a mechanic, to fix it. Before Mr. Parnell began the repair, a female officer from the local police department arrived and informed Mr. Massey about Mr. Mackey's crash.

Our review of the record shows that there was no evidence to establish that TxDOT had actual knowledge of the condition at the intersection, or that TxDOT, through the exercise of ordinary care, could have warned or made the condition safe. Because TxDOT objected to the omission of the necessary elements of a premises defect claim at trial, and Mr. Mackey failed to obtain jury findings on these elements, Mr. Mackey cannot recover under a premises defect claim. *See York*, 284 S.W.3d at 848; *Gutierrez*, 284 S.W.3d at 850; *Payne*, 838 S.W.2d at 241(holding that knowledge element could not be deemed in favor of plaintiff where defendant objected to the omission of that element from the jury charge). Thus, the verdict does not support a judgment in Mr. Mackey's favor. *See York*, 284 S.W.3d at 848. Accordingly, we sustain Issue Two.

Having sustained Appellant's issues, we must reverse the trial court's judgment, and dismiss the case. *See York*, 284 S.W.3d at 848.

July 20, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.