

# NUMBER 13-14-00377-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**UNITED SCAFFOLDING, INC.,**                                            **Appellant,**

**v.**

**JAMES LEVINE,**                                            **Appellee.**

### On appeal from the 172nd District Court
### of Jefferson County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant United Scaffolding, Inc. (USI) raises two issues on appeal (1) asserting

that there was charge error in the submission of a general negligence claim as opposed

to a claim for premises liability, and (2) challenging the trial court's order granting appellee

James Levine's motion for new trial.[1]  We affirm.

## I.  BACKGROUND

In a day where civil cases rarely make it to trial, this case has proven the exception—twice.  Many of the underlying facts are undisputed.  Valero Energy Corporation (Valero) owns and operates a refinery in Port Arthur, Texas.  USI is a contractor that provides scaffolding for Valero at its Port Arthur location.  Levine, a Valero employee, worked at the refinery as a pipefitter.  On December 26, 2005, Levine attempted to perform a task at the Valero facility that required the use of a scaffold provided by USI.

According to OSHA requirements, a "competent person" must inspect the scaffolding before any work can be performed on any given day.  USI contends that pursuant to its agreement with Valero, Valero is required to notify USI of its intent to use a USI scaffold, following which a USI employee qualified as a "competent person" is to inspect the structure as required by OSHA and Valero.  However, Valero did not notify USI of its intent to use the subject scaffold on December 26, 2005, and no USI employee inspected the scaffold before its use.  Levine testified that he checked the scaffold "tag" before he began work, and the tag indicated that the scaffold had been inspected that day.[2]  While on the scaffold, Levine stepped on a piece of plywood that was not nailed down.  The plywood slid, and Levine fell through a hole on the floor of the scaffold but

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 46, 2015 R.S.).

[2] As per Valero policy, there was a document attached to the scaffold that indicated when the last inspection had occurred and who performed the inspection.  Neither Valero nor USI preserved the tag as evidence, and the identity of the last person to inspect the scaffold is unknown.

2

was able to catch himself with his arms. Levine allegedly suffered injury as a result of his fall.

Levine filed suit against USI on negligence and premises liability grounds. The case was first tried before a jury in December of 2008. A general negligence question was submitted to the jury, and the jury found USI negligent. The jury determined that USI was 51% negligent and Levine was 49% negligent and awarded Levine $178,000 in damages for future medical expenses. The jury entered findings of zero damages for Levine's other damage claims, including his claims for past medical expenses, past pain and suffering, and past and future mental anguish.

Levine filed a motion for new trial asserting that the jury's findings of zero damages as to all but future medical expenses were against the great weight and preponderance of the evidence. The trial court agreed and granted Levine's motion for new trial. USI filed a petition for writ of mandamus with the Ninth Court of Appeals alleging that the trial court abused its discretion in granting a new trial, which was denied. Upon further review, the Texas Supreme Court agreed with USI and conditionally granted the writ, directing the trial court to provide the specific bases for its order granting the new trial.[3] The trial court amended its order. USI again filed a petition for writ of mandamus asserting that the trial court's amended order failed to comply with the Texas Supreme Court's instruction. This petition for writ of mandamus also went to the Texas Supreme Court and the court again conditionally granted the writ.[4] The trial court entered a second

---

[3] That proceeding can be located at *In re United Scaffolding, Inc.,* 301 S.W.3d 661 (Tex. 2010) (orig. proceeding).

[4] That proceeding can be located at *In re United Scaffolding, Inc.,* 377 S.W.3d 685 (Tex. 2012) (orig. proceeding).

amended order granting Levine's new trial.[5]  USI did not file a third petition for writ of mandamus.

The case was tried for the second time in February of 2014.  The jury again found USI negligent, but this time determined that Levine was not contributorily negligent and assessed damages of over $1,920,000 for Levine.  The trial court entered judgment on the verdict, and this appeal followed.

## II.    PREMISES DEFECT V. GENERAL NEGLIGENCE

By its first issue, USI contends that the court's charge erroneously submitted a negligence question instead of a premises liability question.  In response, Levine asserts that USI waived any alleged charge error for failure to object to the charge before it was submitted to the jury.  Levine further responds that his negligence claims against USI were appropriate because USI did not have control of the premises when his injury occurred.  Assuming without deciding that the issue is properly preserved, we agree with Levine that the negligence question was appropriate.

Whether a condition is a premises defect is a legal question.  *City of San Antonio v. Parra,* 185 S.W.3d 61, 63 (Tex. App.—San Antonio 2005, no pet.) (citing *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 866 (Tex.2002)).  We review legal questions de novo.  *Reliance Nat. Indem. Co. v. Advanced Temporaries, Inc.,* 227 S.W.3d 46, 50 (Tex. 2007).

It is well recognized that a negligence finding is not sufficient if the case is one of

---

[5] We note that the Texas Supreme Court had not yet expanded the scope of appellate review to include a review of the merits when the trial court signed its second amended order granting Levine's motion for new trial on November 2, 2012. *See In re Toyota Motor Sales, U.S.A., Inc.,* 407 S.W.3d 746, 759 (Tex. 2013) (orig. proceeding)

premises defect. *See Clayton W. Williams, Jr., Inc. v. Olivio,* 952 S.W.2d 523, 528–29 (Tex. 1997). Premises liability and negligence are two distinct theories of liability and involve different elements to be proven. *See id*; *City of San Antonio v. Parra,* 185 S.W.3d 61, 63 (Tex. App.—San Antonio 2005, no pet.) The difference between the two is long established and well defined—injury by an ongoing activity is ordinary negligence where injury by a hazardous condition constitutes premises liability. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex. 1992); *H.E. Butt Grocery Co. v. Warner,* 845 S.W.2d, 258, 259 (Tex. 1992).

Traditionally, premises defect cases have applied strict liability to hold a possessor of land liable for physical harm caused to invitees by a condition on the land if, but only if, the landowner:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex. 1983). A defendant other than a landowner can be held responsible based on the same standards as the landowner if the defendant controls the premises. *Thornhill v. Ronnie's I-45 Truck Stop,* 944 S.W.2d 780, 788 (Tex. App.—Beaumont 1997, writ dism'd by agr.). Control in this context is defined as "the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." *County of Cameron v. Brown,* 80 S.W.3d 549, 553 (Tex. 2002) In addressing the issue of control, the supreme court has held that "a premises liability defendant may be held liable for a dangerous condition on the property if it

5

'assumed control over and responsibility for the premises,' even if it did not own or physically occupy the property. *Id.* "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant has the responsibility to remedy it." *Id.*

Both parties agree that a determination of "control" is central to our analysis of this issue and further agree that "control means the authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." *See id.* USI's argument that it controlled the premises and that, therefore, a general negligence question was improper is based, in part, on the fact that it owned the scaffold in question, its relationship with Valero was a continuing one, and it was contractually obligated to inspect its scaffolds upon request. However, USI failed to direct this Court to any contractual provision that stated that USI was the only entity able to provide a "competent person" to inspect the subject scaffolds before work could be done, and the testimony at trial did not support USI's position that only a USI "competent person" could inspect the scaffold or that USI had control of the scaffold on the day of the incident.

Our review of the evidence shows that on December 26, 2005, Valero—not USI— maintained "control," as set forth in *Brown,* because it had the power and authority to manage, direct, superintend, regulate, and oversee the subject scaffold. *See id.* A Valero supervisor was present and overseeing the operations requiring the use of the scaffold by two Valero employees, one of which was Levine. Levine and his co-worker followed Valero scaffold policy as opposed to USI scaffold policy as evidenced by the fact

6

that they were not wearing fall protection as required by USI's policy.[6]  USI also followed Valero's policy and procedures in the construction and maintenance of the scaffold, performed scaffold inspections upon Valero's request, and followed Valero's "tagging" procedure to notate the scaffold's inspection status and to identify any dangerous conditions.

In addition, though USI might have owned the scaffold, based on the above factors and testimony elicited at trial, USI was not "responsible" for the scaffold on the day of the incident because the scaffold was not under USI's control.  USI's Valero site safety coordinator, Kenneth P. Broussard Jr., testified on direct examination as follows:

Question:    Other than United Scaffolding, who wasn't there, who else at Valero had competent people that could inspect the scaffold?

Answer:    Valero.

Question:    If Valero went to this scaffolding on the backside of the exchanger and inspected that scaffolding, whose scaffolding does that become?

Answer:    Not ours because we didn't inspect it.

Question:    Does that become a Valero scaffold?

Answer:    The responsibility, yes.

Not only does Broussard's response clearly indicate that Valero was capable of inspecting the subject scaffolding, but Broussard also directly stated that Valero potentially bore responsibility for the scaffold in question, negating USI's position that it solely controlled the premises.

Because the relevant inquiry in determining whether a claim sounds in general

---

[6] USI would have required employees to wear "fall protection."  Valero did not require its employees to wear fall protection on the scaffold at issue.

negligence or premises defect is "whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant has the responsibility to remedy it"—we determine that USI did not have a level of control sufficient to establish a premises defect claim. *See Brown,* 80 S.W.3d at 553. As Levine's claim was for negligence and was not one of premises defect, the negligence question submitted to the jury was proper. We therefore determine there was no error in the charge warranting reversal. We overrule USI's first issue.

### III.   MOTION FOR NEW TRIAL

By its second issue, USI contends that the trial court abused its discretion when it granted Levine's motion for new trial. Specifically, USI contends that there was sufficient evidence supporting each jury finding and the trial court "invaded the province of the jury" by granting Levine a new trial. Levine contends that the trial court's grant of his motion for new trial is not properly before this Court because a merits-based review is appropriate only via petition for writ of mandamus. In the alternative, Levine argues that the trial court did not abuse its discretion in finding that the jury's damage findings were against the great weight and preponderance of the evidence and granting a new trial.

USI urges this Court to apply a merits-based review of the trial court's order granting a new trial in the context of appellate review of a final judgment. However, there are limited exceptions to the general rule that an order granting a motion for new trial rendered within the period of the trial court's plenary power is not reviewable on appeal, either by direct appeal from the order or from a final judgment rendered after later proceedings. *See Wilkins v. Methodist Health Care Sys.,* 160 S.W.3d 559, 563 (Tex. 2005); *Hull v. South Coast Catamarans,* 365 S.W.3d 35, 40 (Tex. App.—Houston [1st

8

Dist.] 2011, pet. denied); *Pagare v. Pagare,* 344 S.W.3d 575, 583 (Tex. App.—Dallas 2011, pet. denied).    There are three recognized instances in which a Texas appellate court has overturned a trial court's grant of a new trial:    (1) when the trial court's order was wholly void; (2) when the trial court specifically based its new trial order on an irreconcilable conflict in answers to jury questions and the answers were not in conflict; and (3) when the trial court did not specifically state its reasons for granting a new trial. *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 209, 213 (Tex. 2009); *Wilkins,* 160 S.W.3d at 563; *Hull,* 365 S.W.3d at 40–41.

Though the Texas Supreme Court has recently expanded the scope of appellate review of an order granting a motion for new trial via mandamus, we do not find that its holdings permit direct appeal of an order granting a new trial once the order has merged into a final judgment.    *See In re Toyota Motor Sales, U.S.A., Inc.,* 407 S.W.3d 746, 759 (Tex. 2013) (orig. proceeding) ("[T]he reasons articulated in a new trial order are subject to merits-based *mandamus* review.") (emphasis added) *In re Columbia Med. Ctr.,* 290 S.W.3d at 209;; *see also Kirk v. State,* 454 S.W.3d 511, 515–16 (Tex. Crim. App. Mar. 25, 2015) (Alcala, J., concurring) (citing *In re Columbia Med. Ctr.* and recognizing that in the civil context an order granting a new trial cannot generally be appealed).    Therefore, because USI does not contend on appeal that the order granting a new trial fell into one of the recognized exceptions above, it is not subject to appellate review via direct appeal.[7]

---

[7]    The trial court granted Levine's motion for new trial before the supreme court handed down *In re Toyota,* which allowed merits-based mandamus review of orders granting a new trial.    *See In re Toyota,* 407 S.W.3d 746, 759 (Tex. 2013) (orig. proceeding). Based on our review of the record from the first trial, we note that the trial court in this case was within its discretion, on at least one ground, in granting a new trial because the jury's award of zero damages for past medical expenses was against the great weight and preponderance of the evidence.    *See In re Lufkin Indus., Inc.,* 317 S.W.3d 516, 520–21 (Tex. App.— Texarkana 2010, orig. proceeding).

*See Wilkins,* 160 S.W.3d at 563.   We do not reach USI's second issue.

**IV.   CONCLUSION**

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 1st
day of September, 2015.